UNITED STATES BANKRUPTCY COURT        For Publication
SOUTHERN DISTRICT OF NEW YORK
_____
                               :
In re                         :        Chapter 11
                               :
ENRON CORP., *et al.*,          :        Case No. 01-16034 (AJG)
                               :           (Confirmed Case)
            Reorganized Debtors.    :
                               :
_____:
                               :
ENRON WIND ENERGY STSTEMS, LLC,   :
ENRON WIND CONSTRUCTORS, LLC, and  :
ZOND MINNESOTA CONTRUCTION       :
COMPANY, LLC,                   :
             Plaintiffs,        :        Adv. Pro. No. 04-03099
                               :
            v.                 :
                               :
MARATHON ELECTRIC             :
MANUFACTURING CORPORATION,     :
                               :
            Defendant.       :
_____:


OPINION GRANTING IN PART, DENYING IN PART
MOTION TO DISMISS CERTAIN CLAIMS IN FIRST AMENDED COMPLAINT


A P P E A R A N C E S

LEBOUEF, LAMB, GREENE & MACRAE, L.L.P.
Attorneys for Plaintiffs
725 South Figueroa Street, Suite 3100
Los Angeles, CA  90017

        Dean Hansell, Esq.
        Elizabeth Page Smith, Esq.
        Eric A. Kauffman, Esq.
        Zejreme Radonic, Esq.
        Anita Jain, Esq.
             Of Counsel

FOLEY & LARDNER LLP
Attorneys for Defendant
777 East Wisconsin Avenue
Milwaukee, WI  53202

   James R. Clark, Esq.
   Andrew J. Wronski, Esq.
    Of Counsel

90 Park Avenue
New York, NY  10016

   Todd C. Norbitz, Esq.
   Jeremy L. Wallison, Esq.
    Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

# I.  INTRODUCTION

This litigation arises from the purchase by Enron Wind Energy Systems, LLC, Enron Wind Constructors, LLC, and Zond Minnesota Construction Company, LLC (collectively, "Enron Wind" or the "Plaintiffs") of generators from Defendant Marathon Electric Manufacturing Corporation ("Marathon" or the "Defendant") beginning in or around April 1997.  Due to the alleged failure of each generator, the parties entered into a Warranty Agreement.  Later, Marathon denied warranty coverage, prompting Enron Wind to file a complaint seeking damages under various theories.  The Defendant now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims in part and certain claims in their entirety.

## II. BACKGROUND

A. <u>Parties</u>

Defendant Marathon is a Wisconsin corporation in the business of designing, engineering and manufacturing motors and generators. The Plaintiffs are in the business of assembling, operating, installing, and selling products known as wind turbine systems. Once assembled, the wind turbine systems were installed in power projects throughout the United States, and several were sold to third parties. Enron Wind bought five hundred and sixty four 750-kilowatt generators from Marathon. Each generator soon had problems performing as the parties intended. The parties negotiated and executed a settlement agreement (the "Warranty Agreement") in January 2001.

B. <u>The Warranty Agreement</u>

The Warranty Agreement had several purposes, including releasing Marathon from pre-existing claims and establishing the framework for the warranty claim procedures. The Warranty Agreement contains several provisions highly relevant to this dispute.

Section 3.2 sets the framework for the warranty claim procedure. In summary, to assert a warranty claim, Enron Wind had to provide written notice of the claim. Then, Marathon had five days upon receipt of the notice to notify Enron Wind with respect to any non-conforming item whether Marathon intended to (a) repair the generator at Marathon's facility, (b) replace the generator, (c) repair the generator on site (i.e., at Enron Wind's facility, or (d) reimburse Enron Wind for on-site repairs approved by Marathon and made by Enron Wind. Should Marathon fail to notify Enron Wind, Section 3.2(g) provides that Enron Wind's "exclusive remedy and [Marathon's] sole

3

obligation under this Section 3.2 shall be for [Enron Wind] at [Marathon's] request, to

return the Non-Conforming Item to [Marathon] . . . in exchange for a cash refund." The

specific provisions are set forth in the margin.[1]

---

[1]  3.2. Warranty Repairs and/or Replacements. Notice, and Response Time.  (Marathon is referred to as MEMC.)

A. [Enron Wind] shall notify (a "Warranty Notice") the quality assurance officer at MEMC (Greg Smith or his successor) of any claim that any Generator (or any component and/or part of a Generator) does not comply with the warranties set forth above (any such item, a "Non-Conforming Item"). All Warranty Notices relating to a particular Generator must be postmarked or delivered to MEMC within thirty (30) days after the end of the Warranty Term applicable to such Generator in order to be effective. After MEMC receives a Warranty Notice, the Parties agree to promptly consult with each other to determine the most efficient and cost-effective method to address such Warranty Notice.

B. MEMC shall, within five (5) working days after receipt of such Warranty Notice, notify [Enron Wind] whether such Non-Conforming Item will, at MEMC's option and expense, be:
(i) delivered by [Enron Wind] to MEMC and repaired and returned by MEMC to [Enron Wind],
(ii) delivered by [Enron Wind] to MEMC and replaced and returned by MEMC to [Enron Wind];
(iii) repaired by MEMC at the operating location of the Non-Conforming Item, or
(iv) repaired by [Enron Wind] at the operating location of the Non-Conforming Item, with reimbursement by MEMC (at the rates contained in Exhibit N to this Agreement) within thirty (30) days after MEMC's receipt of an invoice from [Enron Wind]. If [Enron Wind] repairs such Non-Conforming Item, the item shall have the same warranties provided in Section 3.1 above, and the same Warranty Term, as though the item had been replaced or repaired by MEMC. MEMC's use of the method contained in this Section 3.2B(iv) is subject to [Enron Wind's] approval within five (5) days after notification by MEMC. If [Enron Wind] does not provide such approval, within five (5) days thereafter MEMC shall select one of the other methods contained in this Section 3.2B.

G. In the event that MEMC does not notify [Enron Wind] of MEMC's intended method of repairing or replacing such Non-Conforming Item within the five (5) working day period specified in Section 3.2B, or in the event [Enron Wind] does not approve MEMC's request to have [Enron Wind] repair such Non-Conforming Item pursuant to Section 3.2B(iv) and MEMC does not select an alternative method of repair or replacements specified in Section 3.2B within five (5) days thereafter, or in the event that MEMC is unable to repair or replace a Non-Conforming Item within (i) the thirty (30) calendar day period specified in Section 3.2C or (ii) the schedule set forth in Exhibit K (unless MEMC is not obligated to so repair or replace such Non-Conforming Item pursuant to the limitations contained in Section 3 .2L), then [Enron Wind's] exclusive remedy and MEMC's sole obligation under this Section 3.2 shall be for [Enron Wind], at MEMC's request, to return the Non-Conforming Item to MEMC at MEMC's expense in exchange for a cash refund issued by MEMC to [Enron Wind] in an amount equal to the total of (a) the original purchase price of such Non-Conforming Item and (b) the original reasonable shipping costs paid by [Enron Wind] in connection with the delivery of such Non-Conforming Item to its original destination. If MEMC does not request that [Enron Wind] return the Non-Conforming Item to MEMC, then [Enron Wind] shall, at [Enron Wind's] expense, dispose of such Non-Conforming Item and [Enron Wind] shall be entitled to all proceeds, if any, resulting from such disposition, as well as the amounts set forth in (a) and (b) in the prior sentence.

H. The remedies contained in this Section 3.2 shall be the sole and exclusive remedies of [Enron Wind] for breach of warranty by MEMC . . . provided, however, that MEMC shall continue to be liable to [Enron Wind] pursuant to Section 3.1 after the date of the expiration of the applicable

Section 9.3 disclaims special, consequential, punitive, and incidental damages

> 9.3  Damages: Except as and then only to the extent expressly provided in this Agreement, in no event shall either Party be liable to the other Party for special, punitive, incidental or consequential damages, including, without limitation, damages relating to loss of revenue, production, or profits; loss of tax credits; loss of financing; loss of goodwill; loss of use of equipment; cost of capital; costs of substitute products, facilities, or services; costs of downtime, shutdown, or slowdown; or any other type of economic loss whatsoever; and in no event shall either Party be liable to the other party for any claims of any customer of, investor in, or lender of either party for any such damages.

Section 8.1 addresses indemnification

> 8.1A.  The provisions of this Section 8.1A are expressly agreed to be subject in all respects to the limitations on the recovery of damages which are contained in Section 9.3, which limitations are incorporated herein by reference. [Defendant] agrees to indemnify and hold [Plaintiffs] harmless from and against any and all liabilities, obligations, losses, claims, damages, costs, charges, or other expenses including, but not limited to, reasonable attorneys' fees and litigation costs (collectively, "Claims") to the extent that the same accrue or arise out of or result from (a) any Claim by any third party that such third party was injured, harmed, or damaged in any way due or related to breach by [Defendant] of any of the warranties, representations, or covenants of [Defendant] contained in this Agreement (subject, however, to any provisions of this Agreement which limit or exclude any such warranties, representations, or covenants of [Defendant] or remedies for breach thereof), (b) any Claim by any third party which is attributable to . . . destruction of tangible property, either real or personal, to the extent caused by and limited to the comparative negligent act or omission or willful misconduct of . . . [Defendant or its employees/agents].

Section 3.7 contains a limitation on the "failure of essential purpose"

> 3.7  <u>No Failure of Essential Purpose.</u>  Under no circumstances shall any warranty or remedy contained in this Agreement be deemed to have failed of its essential purpose as long as

---

Warranty Term, for all valid warranty claims related to occurrences during such Warranty Term, for which Warranty Notices are properly given by [Enron Wind] pursuant to Section 3.2A.

[Marathon] has the right to provide [Enron Wind] with a cash refund.

C.    The Dispute

The following facts, drawn from the Amended Complaint except where noted, must be accepted as true for purposes of this motion to dismiss.  After entering into the Warranty Agreement, Enron Wind claims the generators failed to perform or otherwise had major problems performing.  As a result of these failures and/or degradations in performance, Enron Wind issued numerous warranty notices (pursuant to Section 3.2 of the Warranty Agreement) to Marathon for all of the Marathon generators supplied to Enron Wind.  For example, between January 2001 and the beginning of June 2001, Enron Wind issued warranty notices for several Marathon generators for shaft-bearing failures. (First Amended Complaint ("Amended Complaint"), ¶¶ 44-45.)  Marathon responded on June 24, 2001, that the damage was due to excessive voltage spikes caused by Enron Wind's operation of the generators contrary to the design and product specifications. Marathon concluded that the damage was not a warranted defect and denied coverage.

The Plaintiffs filed for bankruptcy between February and August 2002. (Amended Complaint, ¶¶ 9-11.)

In addition to the numerous warranty notices issued in 2001, on June 28, 2002, July 30, 2002, and again on October 28, 2002, Enron Wind issued warranty notices to Marathon (pursuant to Section 3.2 of the Warranty Agreement) because the Marathon generators allegedly experienced failures and/or degradations in performance as a result of defects in design, materials, and/or workmanship.  (Amended Complaint, ¶ 48.)  On July 2, 2002, August 6, 2002 and continuing after that, Marathon unilaterally denied and/or rejected Enron Wind's warranty notices.

6

Plaintiffs filed their initial complaint on June 2, 2004. After Marathon responded with a partial motion to dismiss, the Plaintiffs filed the Amended Complaint on September 7, 2004. The Amended Complaint slightly altered the allegations from the initial complaint and stated two new claims for breach of the implied covenant of good faith and fair dealing and contractual indemnity. The claims in the Amended Complaint are (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) promissory fraud, (4) intentional interference with contractual relations, (5) intentional interference with economic relations, (6) negligent interference with economic relations, (7) violations of California Business and Professions Code section 17200, and (8) contractual indemnity.

D. The Pleadings

Marathon filed another motion to dismiss certain claims of the Amended Complaint, along with accompanying memorandum on September 28, 2004 ("Marathon's Motion to Dismiss Memo."). That motion is the subject of the present opinion. Enron Wind timely responded on October 25, 2004, with their Memorandum of Law In Support of Objection to Defendant's Partial Motion to Dismiss Certain Claims of Plaintiffs' First Amended Compliant ("Enron Wind's Opp. Memo."). Marathon filed a Reply Memorandum In Support of Defendant's Partial Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint on October 27, 2004 ("Marathon's Reply Memo.").

## III. LEGAL STANDARDS

A. Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint." *See Jackson Nat'l Life Ins. Co. v. Merrill, Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).  A complaint may not be dismissed under Rule 12(b)(6), incorporated herein by Bankruptcy Rule 7012(b)(6), unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Actrade Fin. Tech. Ltd.*, 337 B.R. 791, 800 (Bankr. S.D.N.Y. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992 (2002).  To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them.  *See Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

B. Choice of Law

1. *Contract Claims*

Based on both parties agreeing that California law governs the contract disputes because of the Warranty Agreement's choice of law provision, California law applies to the contract claims.

2. *Tort Claims*

The Court looks to choice-of-law rules of New York to resolve any conflict-of-law questions.  *See, e.g., In re Lois/USA, Inc.*, 264 B.R. 69, 90 (Bankr. S.D.N.Y. 2001).  In tort actions, New York law use an "interest analysis" to determine the jurisdiction with

the greatest interest in the litigation.  *See Roselink Investors, LLC v. Shenkman*, 386 F.

Supp. 2d 209, 225 (S.D.N.Y. 2004); *see also Schultz v. Boy Scouts of Am., Inc.*, 65

N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (N.Y. 1985) (New York's Court

of Appeals applies interest analysis as "the relevant analytical approach to choice of law

in tort actions").  Under this approach, the most significant factors are the parties'

domiciles and the location(s) of the tort.  *Id.*  The parties' forum selection clause in any

applicable agreement is also a factor a court will consider.  *See Roselink Investors*, 386 F.

Supp. 2d at 225.

The parties agreed to be governed by California law in the Warranty Agreement.

In their arguments discussing the tort claims, the parties cite California law.  Plaintiffs are

all California companies, each with a principal place of business in Texas.  It is unclear

where the Warranty Agreement was negotiated or where it was executed.  The location(s)

of the Plaintiffs' alleged injuries is not stated here, as the Amended Complaint states that

the generators were installed in wind turbine systems, and then those systems "were

installed in power projects located in various parts of the United States."  (Amended

Complaint, ¶ 3.)  The location of the wind turbine system installation or the locations of

any power projects are not noted.  Based on the domicile of the Plaintiffs and the forum

selection clause, under New York's choice-of-law analysis, the Court determines that

California law applies. [2]

---

[2] Furthermore, both of the parties rely heavily on California law.  *See Columbia Sav. & Loan Ass'n v. Am. Int'l Group, Inc.*, No. 91 Civ. 0589 (MJL), 1994 WL 114828, at *5 (S.D.N.Y. Mar. 31, 1994) (Court adhered to California authority because the Plaintiffs' negligent misrepresentation claim was brought and argued under California law.); *Med. Research Assoc., P.C. v. Medcon Fin. Serv., Inc.*, 253 F. Supp. 2d 643, 648 (S.D.N.Y. 2003) (the court found that New York law applied in part because "parties' briefs assume that New York law applies to the contract and tort law claims").

C.  Promissory Fraud and Rule 9(b) Pleading Standard

A complaint alleging fraud meets the particularity requirements of Rule 9(b) of

the Federal Rules of Civil Procedure if it alleges the time, place, and content of the

fraudulent statements, including reasons why the statements are false.  *See In re*

*GlenFed., Inc., Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) *(*superseded

by statute on other grounds).  Rule 9(b) serves to give defendants adequate notice to

allow them to defend against the charge and to deter the filing of complaints "as a pretext

for the discovery of unknown wrongs," to protect professionals from the harm that comes

from being subject to fraud charges, and to "prohibit [ ] plaintiff [s] from unilaterally

imposing upon the court, the parties and society enormous social and economic costs

absent some factual basis."  *See In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.

1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  Promissory

fraud is not exempt "from the strictures of Rule 9(b), and a plaintiff is required to plead

'facts from which the Court can infer that the allegedly fraudulent statements were

actually false when made.'"  *See Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal.

2002).

**IV.  DISCUSSION**

A.  Claims I and II – Breach of Contract and Breach
of Implied Covenant of Good Faith and Fair Dealing

Marathon seeks a partial dismissal of the claims.  Specifically, Marathon seeks

dismissal of the portion of the claims that seek special, consequential, incidental and

punitive damages.  Marathon argues that, even if Enron Wind's allegations are true and

show breaches of contract and of the duty of good faith and fair dealing, Section 9.3 of

the Warranty Agreement expressly precludes recovery of consequential damages.  Enron

10

Wind claims that the exclusive remedy provisions have failed of their essential purpose because of Marathon's breaches of the Warranty Agreement. Enron Wind claims that Marathon's denial of the warranty notice provisions, which they claim was not an option under the Warranty Agreement, deprived the Plaintiffs of the "exclusive remedy structure" and was a material breach. Marathon argues that Section 3.7 addresses a hypothetical failure of exclusive remedy, and precludes such a failure as long as Marathon has the right to provide a refund. Enron Wind claims that, because of Marathon's allegedly "unreasonable" delay in providing a refund, Marathon has lost that right.

As stated above, the Warranty Agreement contains a clause, Section 9.3, that precludes consequential damages, and a clause, Section 3.7, that addresses the hypothetical failure of essential purpose. Section 3.7 states that "[u]nder no circumstances shall any warranty or remedy contained in this Agreement be deemed to have failed of its essential purpose as long as [Marathon] has the right to provide [Enron Wind] with a cash refund."

### 1. *Case Law Under the U.C.C. Is Applicable*

As a preliminary matter, the Court must address whether the California Commercial Code, the state-law counterpart of the Uniform Commercial Code (U.C.C.),[3] applies here to what is likely a contract for services. The codes' sections state that if an exclusive remedy fails of its essential purpose, "remedy may be had as provided in this" code. Cal.Com.Code § 2719; U.C.C. § 2-719. "If the buyer can establish that the exclusive remedy provided in the contract 'fails of its essential purpose' the buyer may disregard that term of the contract and pursue remedies to which the buyer otherwise

---

[3] California Commercial Code § 2719 is virtually identical to U.C.C. § 2-719.

11

might not have recourse." J. White & R. Summers, *Uniform Commercial Code*, §12-10 (4th ed. 1995). There have been numerous cases from various jurisdictions discussing whether to sidestep a provision against consequential damages and award them when there has been a failure of exclusive remedy. *See infra* § IV.A.5. Without a controlling California Supreme Court case on the issues, the Court "may consider both the decisions of the courts of other jurisdictions, as well as other persuasive authorities" that discuss U.C.C. § 2-719. *See Sheehan v. Monaco Coach Corp.*, No. 04-C-717, 2006 WL 208689, at *12 (E.D. Wis. Jan. 25, 2006)

It is not entirely clear at the outset that either the U.C.C. or the California Commercial Code should apply here. The Ninth Circuit, in *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985), stated that the district court, in awarding consequential damages despite a limitation of damages clause, relied on the California Commercial Code and that "[s]uch reliance was proper only if the computer software system may be characterized as a 'good' rather than a service." Judging from that sentence, if the contract at issue here is a services contract, reliance on the U.C.C. or the California Commercial Code and the cases interpreting them would appear to be improper. That court also made clear that the plaintiffs were only able to reach the remedies barred by the contract because of the California Commercial Code. *See id.* at 547 ("*Under the Code*, a plaintiff may pursue all of the remedies available for breach of contract if its exclusive" remedy fails) (emphasis added). Nonetheless, despite the Court's questions as to whether the U.C.C. or the California Commercial Code apply to the Warranty Agreement, for the following reasons the Court will assume the codes do apply and will consider U.C.C. cases. First, neither party extensively addressed that issue

and both cite precedent under the Ninth Circuit that deal with the U.C.C., indicating a

willingness to rely on this body of law.  Also, the underlying contract – for the sale of

generators – was a sale of goods and it is those goods to which the repair or remedy

clause in the Warranty Agreement refers.  Further, other cases involving services

contracts have looked to cases decided under the U.C.C.  *See Nat'l Rural Telecomms.*

*Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1055 n.17 (C.D. Cal. 2003).  Although it

seemingly is in conflict with *RRX Indus.,* the opinion speaks more directly as to whether

a California court should look to the California Commercial Code to analyze a services

contract.  The court in *National Rural Telecommunications* looked to California

Commercial Code section 2719 regarding a services contract and explained that "Courts

do look to the Uniform Commercial Code, or its state analogues, in analyzing non-U.C.C.

agreements, such as the agreement between" the parties.  *Id.*

## 2.  *Limited Remedy Provisions and Failure of Essential Purpose*

A limited remedy provision's primary objective "is to provide the seller an

opportunity to tender conforming goods and thereby limit his exposure to risk for other

damages, while simultaneously providing the purchaser with the benefit of his bargain-

i.e. – conforming goods."  *See Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.

Supp. 1027, 1042 (D. S.C. 1993).  "The . . . picture of the limited repair warranty . . .

rests upon at least three assumptions:  that the warrantor will diligently make repairs, that

such repairs will indeed 'cure' the defects, and that consequential loss in the interim will

be negligible."  Eddy, *On the "Essential" Purposes of Limited Remedies: The*

*Metaphysics of U.C.C. Section 2-719(2)*, 65 CAL.L.REV. 28, 63 (1977).

A provision to limit "the remedy to repair or replacement of defective parts fails of its essential purpose . . . if the breaching manufacturer or seller is unable to make the repairs within a reasonable time period." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 707-08 (9th Cir. 1990). Section 2-719's "most frequent application . . . occurs when under a limited 'repair and replacement' remedy, the seller is unwilling or unable to repair the defective goods within a reasonable period of time." White & Summer, *Uniform Commercial Code*, § 12-10. The aggrieved buyer does not need to "show negligence or bad faith on the part of the seller, for the detriment to the buyer is the same whether the seller's unsuccessful efforts [to provide a remedy] were diligent, dilatory, or negligent." *Milgard Tempering*, 902 F.2d at 708.

Here, aside from the usual limitation on remedies (contained in Section 9.3) that appear in these cases, the Warranty Agreement also contains a clause directed specifically at a hypothetical failure of essential purpose. Section 3.7 states that "[u]nder no circumstances shall any warranty or remedy contained in this Agreement be deemed to have failed of its essential purpose as long as [Marathon] has the right to provide [Enron Wind] with a cash refund." The issue then is does this provision allow the Court to rule as a matter of law there has been no failure of essential purpose. Enron Wind contends that the language in Section 3.7 shows that the parties did not agree that there could *never* be a failure of essential purpose. Rather, Enron Wind argues, Marathon must still have the *right* to provide a cash refund. Enron Wind argues Marathon has forfeited that right by not providing a refund in a reasonable time, stating Marathon "certainly did not retain the 'right' after a 3+ year continuing breach to provide only a refund." (*See* Enron Wind's Opp. Memo, at 16.) Furthermore, Enron Wind asserts that Marathon has

lost that right as a breaching party.  At the least, Enron Wind argues that the issue is a

factual question that should not be resolved on a motion to dismiss.

Marathon argues that there can be no failure of essential purpose here as a

matter of law.  Marathon states that it has not lost the right to provide a refund.  Of the

delay, Marathon states that it does not have to immediately provide a refund when

provided with a warranty notice, within 35 days or otherwise, and that it should be able to

litigate the merits of the underlying dispute – referring to the generators' electrical

failures – without losing the bargained-for benefit of the exclusive remedy.

### 3. *The Right to Provide a Refund*

Enron Wind argues that because there has been no refund in a "reasonable" time,

Marathon has lost, or waived, the right to provide a refund.  Marathon argues that the fact

that it has not yet provided a refund does not mean that it has lost the right to do so and

that the Plaintiffs cannot support their proposition that a party must provide a remedy on

demand without litigating the merits of the underlying dispute or risk losing the benefit of

the bargained-for exclusive remedy.

Related to the right to provide a refund, both parties assume unilateral decision-

making power under certain of the Warranty Agreement's provisions.  Enron Wind

claims that any "non-conforming" generator under Section 3.2 is any generator that

Enron Wind claims is non-conforming.  The Defendant claims that it has the right to

provide a refund only after determining if the generator is actually non-conforming.

The Court finds that the parties have established a strict threshold under the

Warranty Agreement as to whether the remedies can be found to have failed of their

essential purpose.  The remedies of refund or repair could effectively fail in their

essential purpose as a factual matter yet the Plaintiffs could still be restricted to a refund because of Section 3.7's prohibition that "[u]nder no circumstances shall any . . . remedy . . . be deemed to have failed of its essential purpose as long as" Marathon has the right to provide a cash refund to Enron Wind.

For example, assume there was an agreement with provisions identical to Sections 3.2 and 3.7 between a buyer and a seller. The buyer notifies the seller that the machine it bought from the seller has failed. The seller takes five years trying, in vain, to fix the complex machine. (Replacement for whatever reason is not an option.) The seller may not have necessarily waived the right to provide a refund, although a refund after five years would arguably not remedy the situation or achieve a primary objective of a limited remedy provision – putting the buyer in the position it would have been in had the machine properly functioned. Despite the effective failure of the remedies, however, a court would not even look to whether the remedies have failed of their essential purpose as a legal matter unless the court first found that the seller lost the right to provide a refund. Although it may be that the seller has waived that right by its "unreasonable delay" or inequitable conduct, the buyer needs to establish that before being able to reach relief for failure of essential purpose. Moreover, the buyer, by agreeing to the "right to provide a refund" language has allocated to itself certain risks pursuant to the express terms of the contract, namely, the risk that a refund will not be promptly disbursed. As a further point, although the seller's bad or good faith in its attempts to remedy is generally not considered under whether a remedy has failed of its essential purpose, it would seem that a seller's bad faith or other conduct in refusing to provide a refund would be a factor in determining whether the right to provide a refund still exists.

16

The Court finds that the issue of whether Marathon still retains the right to provide a refund under Section 3.7 should not be decided upon a motion to dismiss. Because of Section 3.7's language that a remedy cannot be "deemed" to have failed of its essential purpose as long as Marathon has the right to provide a refund, the inquiry into whether Marathon still retains the right to provide a refund becomes a threshold the Plaintiffs must cross before the Court reaches the issue of whether the repair or replace remedies have failed of their essential purpose.

4. *The Claims for Damages Survive the Motion to Dismiss*

Notwithstanding the Court's determination that it must decide the issue of whether Marathon still retains the right to provide a refund before it reaches the issue of whether the repair or replace remedies have failed of their essential purpose, the Court agrees with the Plaintiffs and the majority of cases that allow well-pleaded claims of a failure of an essential purpose to survive a motion to dismiss. *See, e.g., Portland Gen. Elec. Co. v. Westinghouse Elec. Corp.*, 842 F. Supp. 161, 168 (W.D. Pa. 1993) (denying defendant's motions to dismiss the breach of warranty cause of action as "Plaintiffs have sufficiently pleaded the question of the failure of essential purpose under the Uniform Commercial Code"); *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1063 (5th Cir. 1982) ("the question whether the circumstances in this case justify a [state analogous section 2719] action . . . is a question of fact"); *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 829 (E.D. Pa. 2000) ("Drawing all inferences in favor of the plaintiff . . . I believe that plaintiff Caudill has asserted that defendant refused to repair or replace the software at issue, and thus pled the precise facts required to sustain a claim that an exclusive remedy failed in its essential purpose . . . and

therefore, the limitation on liability clause does not operate to defeat all of plaintiff's claims."); *Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 967 (E.D. Wis. 1999) ("genuine disputes of material fact prevent the Court from concluding that the limited remedy in this case, if any, failed its essential purpose"); *see also* Howard Foss, *When to Apply the Doctrine of Failure of Essential Purpose to an Exclusion of Consequential Damages*, 25 DUQ. L. REV. 551, 575 (1987) (motion to dismiss is inappropriate to decide "the fate of an exclusion of consequential damages upon a failure of a limited remedy").

The Ninth Circuit's *Fiorito Brothers* case also shows that the issue's resolution requires fact-finding. *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309 (9th Cir. 1984). There, truck bodies made by the defendant had been damaged after being used to haul wet cement. The manufacturer's service manager inspected the truck bodies and denied that they were covered under warranty. *Id.* at 1313. The manufacturer had also written the plaintiff and stated that an "investigation" revealed that the truck bodies had been misused. However, at trial, the service manager admitted that he was not an engineer, did not know the effects of hauling wet cement, and did not seek to gain such knowledge. *Id.* Regarding the manufacturer's claimed investigation, the manufacturer admitted there had been no investigation. *Id.* "Based on these facts, the district court correctly concluded that Fruehaf's limited 'repair or replace' remedy had failed of its essential purpose." *Id.*

The Court finds that the Plaintiffs have adequately stated a claim that the Warranty Agreement's limited remedy has failed of its essential purpose, that the failure of essential purpose is a question of fact, and the Plaintiffs' claims for any damages beyond those allowed by the Warranty Agreement should not be stricken. Obviously, as

set forth above, if the Court finds that Marathon still retains the right to provide a refund,

this would be dismissed.

> 5.  *Contractual Limitations on Damages May Survive if an Exclusive Remedy Fails of its Essential Purpose*

Even if the exclusive remedy is found, at a later stage, to have failed in its

essential purpose, that finding does not automatically mean the Warranty Agreement's

limitation on damages should be stricken.  The issue of whether a contractual limitation

on damages survives when the exclusive remedy fails in its essential purpose thrusts

parties into a "legal quagmire that has divided courts across the nation."  *Caudill Seed &*

*Warehouse*, 123 F. Supp. 2d at 830.  Both state and federal courts are divided on the

question.  *See* Howard Foss, "When to Apply the Doctrine of Failure of Essential Purpose

to an Exclusion of Consequential Damages: An Objective Approach, 25 DUQUESNE

L.REV. 551, 555 n.14 (1987) (citing cases); *see also McNally Wellman Co. v. N.Y.  State*

*Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2d Cir. 1995) (noting "there exists a split of

authority on whether subsections (2) and (3) [of U.C.C. 2-719][4] operate independently or

whether the failure of an exclusive remedy precludes enforcement of a consequential

damages exclusion").  The confusion among the decisions and the conflicting views

---

[4] U.C.C. § 2-719 provides that

 (1)  Subject to the provisions of subsections (2) and (3) of this section and of the preceding
      section on liquidation and limitation of damages,
      (a) the agreement may provide for remedies in addition to or in substitution for those
      provided in this Article and may limit or alter the measure of damages recoverable under
      this Article, as by limiting the buyer's remedies to return of the goods and repayment of
      the price or to repair and replacement of non-conforming goods or parts; and
      (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be
      exclusive, in which case it is the sole remedy.
 (2)  Where circumstances cause an exclusive or limited remedy to fail of its essential
      purpose, remedy may be had as provided in this Act.
 (3)  Consequential damages may be limited or excluded unless the limitation or exclusion is
      unconscionable. Limitation of consequential damages for injury to the person in the case
      of consumer goods is prima facie unconscionable but limitation of damages where the
      loss is commercial is not.

"stem[] from ambiguous, if not conflicting, provisions of [section] 2-719 of the U.C.C., and the accompanying comments." *See Otobai, Inc. v. Auto Tell Servs., Inc.*, No. Civ. A. No. 93-2855, 1994 WL 249766, at *10 (E.D. Pa. June 1, 1994).

Courts have also noted the competing concerns expressed in the U.C.C. *See Sunny Indus., Inc. v. Rockwell Int'l Corp.*, 175 F.3d 1021 (7th Cir. 1999) (unpublished opinion). On one hand, section 2-719 was intended to encourage and facilitate consensual allocations of risks associated with the sale of goods. *See V-M Corp. v. Bernard Distrib. Co.*, 447 F.2d 864, 869 (7th Cir. 1971). Clauses limiting or excluding consequential damages terms "are merely an allocation of unknown or undeterminable risks." *See Piper Jaffray & Co. v. SunGard Sys. Int'l, Inc.*, 54 UCC Rep. Serv. 2d 1088, 2004 WL 2222322, at *6 (D. Minn. Sept. 30, 2004). On the other hand, courts have held that the U.C.C. shall be "liberally administered" in order that the aggrieved party is put in as good a position as if the other party had fully performed. *See, e.g., S & R Metals, Inc. v. C. Itoh & Co. (Am.), Inc.*, 859 F.2d 814, 818 (9th Cir. 1988) (referencing Cal.Com.Code § 1106); *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1330 (S.D. Fla. 1999) (referencing U.C.C. § 1-106). In some cases, this goal of the U.C.C. can only be accomplished by striking contractual exclusions of consequential damages when a limited remedy has been rendered a nullity. *See Soo Line R.R. v. Fruehauf Corp.*, 547 F.2d 1365, 1373 (8th Cir. 1977). Further, a buyer hardly would agree to limit the seller's liability for consequential damages if it had known that the seller would "scuttle" the only remedies allowed under the contract. *See Fiorito Bros.*, 747 F.2d at 1315.

The Plaintiffs cite two Ninth Circuit cases and imply the interdependence of the two provisions of U.C.C. Section 2-719 (2) and (3) by asserting that when there has been a "total and fundamental" non-performance of the exclusive remedy, "a separate provision disclaiming consequential damages must similarly fail of its essential purpose." (Enron Wind's Opp. Memo. at 17, citing *RRX Indus.*, 772 F.2d at 547, *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978). The interdependence, or lack thereof, however, still appears to be an open question in California and the Plaintiffs' "must fail" assertion overstates the case law. No state case was found that addressed the issue, and as the Ninth Circuit, analyzing California law, stated in *S.M Wilson*, "[t]he failure of the limited repair warranty to achieve its essential purpose . . . does not mean, however, that the bar to recovery of consequential damages should be eliminated." The court advocated a case-by-case approach, explaining its holding was "not intended to establish that a consequential damage bar always survives a failure of the limited repair remedy to serve its essential purpose. Each case must stand on its own facts." *Id.* at 1375-76.

In summary, the Court cannot reach the issue of whether the remedies have failed of their essential purpose. The Court must first decide the factual issue of whether Marathon's right to provide a refund still exists. It may be, as Enron Wind argues, that Marathon has waived that right through unreasonable delay or knowing conduct aimed at hindering Enron Wind from receiving a refund. Or it may be that Marathon retains the right to provide a refund and that, as the Warranty Agreement states, there cannot be a failure of essential purpose as long as Marathon has the right to provide a refund. For the reasons indicated above, the Defendant's motion to partially dismiss those portions of

Claim I and II that assert claims for special, consequential, incidental, and punitive damages is denied. In a further stage of this proceeding, if Enron Wind shows (1) that Marathon waived its right to make refund, then (2) the Court will have to decide whether the limited remedies have failed of their essential purpose, and (3) whether such a failure bars the contractual limitations and opens the door to consequential damages.

     B.  <u>Claim III –Promissory Fraud</u>

Under California law, a claim for fraud requires the following elements (1) a misrepresentation such as a false representation, concealment or nondisclosure, (2) knowledge of falsity (scienter), (3) an intent to defraud or induce reliance, (4) plaintiff's justifiable reliance, and (5) resulting damage. *See Lazar v. Superior Court*, 909 P.2d 981, 984-85 (Cal. 1996). Promissory fraud is a "subspecies" of a fraud action based on a promise made without the intention to perform it. *Id.* Promissory fraud "is cognizable when a party enters into an agreement without intending to be bound by its terms." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing *Locke v. Warner Bros., Inc.*, 66 Cal. Rptr. 2d 921 (Cal. Ct. App. 1997)). In a promissory fraud action, alleging a promise may satisfy the element of misrepresentation. *See Comerica Bank v. McDonald*, No. C-06-03735 RMW, 2006 WL 3365599, at *3 (N.D. Cal. Nov. 16, 2006). While merely failing to perform a contract does not constitute fraud, a promise made without the intention to perform can be actionable as promissory fraud. *See Richardson v. Reliance Nat'l. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000).

The Court agrees with Marathon that the promissory fraud pleading is deficient. For one, the claims are not pleaded with the requisite particularity under Rule 9(b).

Averments of fraud must be accompanied by the "who, what, when, where, and how" of the alleged misconduct. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). *See also Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1095 (S.D. Cal. 2006) (Rule 9(b) requires complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud").

The Amended Complaint makes general allegations about statements being made "on and prior to January 24, 2001" by two officers, "among others, to the former employees and representatives of Enron Wind." (Amended Complaint ¶ 74.) Rule 9(b), however, requires more specificity as to what the statements were, when they were made, and the identities of the parties to the misrepresentation. *See Rasidescu*, 435 F. Supp. 2d at 1100 (dismissing fraud claims under Rule 9(b) because the plaintiff failed to "specifically identify who made the false statements, where the false statements were made and, most importantly, why the alleged false statements were false and misleading"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986) (interpreting Rule 9(b) to require a statement of "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *see also Tirehanger Corp. v. Am. Honda Motor Co., Inc.*, No. CV03-06776PA(EX), 2004 WL 764380, at *3 (C.D. Cal. Feb. 2, 2004) (dismissing fraud allegations that did "nothing more than mirror the breach of contract and breach of confidence claims" as Rule 9(b) "requires greater specificity in pleading the time, place and nature of the alleged fraud").

23

Furthermore, the chief defect of the promissory fraud allegations is not their lack

of particularity, it is that Enron Wind does not allege any facts – other than the alleged

breach itself – from which the Court could infer that Marathon intended not to perform at

the time it entered into the Warranty Agreement.  Even if the Amended Complaint had

stated the alleged fraudulent statements with greater particularity, "merely pointing to

statements and alleging their falsity does not satisfy Rule 9(b)."  *Richardson v. Reliance

Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000).

The Ninth Circuit has explained that a statement is not necessarily fraudulent merely

because it is contradicted by later-discovered facts.  *In re GlenFed, Inc. Sec. Lit.*, 42 F.3d

1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).  Rule 9(b)

requires a plaintiff to plead facts establishing the falsity of a statement at the time the

statement is made.  *See Richardson*, 2000 WL 284211, at *4.  "The rule therefore

precludes plaintiff from simply pointing to a statement by a defendant, noting that the

content of the statement 'conflicts with the current state of facts,' and concluding that

'the charged statement must have been false' at the time it was made.  *Id.* (citation

omitted).

Here, the Amended Complaint alleges that Marathon made statements that it

would comply with the warranty provisions (Amended Complaint, ¶ 74), but "knew that

the foregoing representations and promises were false, and knew at the time that the

representations and promises were made that it did not intend to perform them."

(Amended Complaint, ¶ 76).  This bare allegation does not allege any facts from which

the Court can infer that the allegedly fraudulent statements were actually false when

24

made.  This could have been done by "pointing to inconsistent contemporaneous statements" made by the defendant.  *Id.* at *5.

The Plaintiffs' allegations are similar to those dismissed by the court in *HSU v. OZ Optics Ltd.*  That court, interpreting the threshold for pleading promissory fraud under Rule 9(b), required that "a plaintiff must point to *facts* which show that defendant harbored an intention not to be bound by terms of the contract at formation."  211 F.R.D. at 620 (emphasis in original).  The court dismissed the complaint, finding that it "simply states that 'defendant OZ had no intention to be bound by the terms as agreed in the aforesaid agreements.'"  *Id.*

The Ninth Circuit has affirmed the dismissal of a promissory fraud claim where the plaintiff, although asserting the defendant had a "secret intention" not to perform a contract, did not present any evidence to support that claim.  *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1088 (9th Cir. 2005).  Similarly, in *Comerica Bank v. McDonald*, No. C-06-03735 RMW, 2006 WL 3365599, at *3 (N.D. Cal. Nov. 16, 2006), the court dismissed the promissory fraud counterclaim because the counterclaimants, although they generally alleged that they were misled, did not specifically allege how they were misled and what statements made to them during the negotiations at issue were misleading.  *See also Richardson*, 2000 WL 284211, at *5 (dismissing promissory fraud claim because the complaint "merely points to statements of intent by the various defendants . . ., notes that the promises were not carried out, and concludes that they must have been false or misleading when made, [however] Plaintiff alleges no facts from which the Court can infer that the allegedly fraudulent statements were actually false when made").  Here, accepting the Plaintiffs' promissory fraud claims would essentially

mean "every breach of contract would support a claim of fraud so long as the plaintiff

adds to his complaint a general allegation that the defendant never intended to keep her

promise." *Id.* at *5.

For the reasons stated above, Claim III of the Amended Complaint for promissory

fraud is dismissed.  To the event that the Plaintiffs can support their allegations of fraud

with appropriate specificity, the Plaintiffs may replead Claim III.

C.  Claims IV, V, and VI -- Intentional Interference with Contractual
    Relations, Intentional Interference with Economic Relations, and
    <u>Negligent Interference with Economic Relations</u>

The elements of the cause of action of intentional interference with contractual

relations under California law are well settled.  The plaintiff must allege "(1) a valid

contract between plaintiff and a third party; (2) defendant's knowledge of this contract;

(3) defendant's intentional acts designed to induce a breach or disruption of the

contractual relationship; (4) actual breach or disruption of the contractual relationship;

and (5) resulting damage."  *See Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d

587, 589-90 (Cal. 1990); *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530

(Cal. 1998) (same).

To prevail on a cause of action for interference with prospective economic

advantage, the following elements must be established:  "(1) the existence of a specific

economic relationship between [plaintiff] and third parties that may economically benefit

[plaintiff]; (2) knowledge by the [defendants] of this relationship; (3) intentional acts by

the [defendants] designed to disrupt the relationship; (4) actual disruption of the

relationship; and (5) damages to the [plaintiff]" proximately caused by the defendant.

*Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983);

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).  In addition,

the California Supreme Court has also stated that a plaintiff seeking to recover for alleged

interference with prospective economic relations has the burden of pleading and proving

that the defendant's interference was wrongful "by some other measure beyond the fact of

interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 746

(Cal. 1995).  In this context, "an act is independently wrongful if it is unlawful, that is, if

it is proscribed by some constitutional, statutory, regulatory, common law, other

determinable legal standard."  *Korea Supply Co.*, 63 P.3d at 950.

For negligent interference, the independently wrongful requirement also applies.

*See Lange v. TIG Ins. Co.*, 81 Cal. Rptr. 2d 39, 44 (Cal. Ct. App. 1998).  Recovery for

negligent interference with economic relations is also limited to those situations when the

defendant owes the plaintiff a duty of due care, and "where the risk of harm is

foreseeable and is closely connected with the defendant's conduct, where damages are not

wholly speculative and the injury is not part of the plaintiff's ordinary business risk."

*J'Aire Corp. v. Gregory*, 598 P.2d 60, 66 (Cal. 1979).

The Defendant argues that Claims IV, V, and VI are barred by the economic loss

doctrine and should be dismissed.[5]  In short, the economic loss rule "bars recovery in tort

for economic damages caused by a defective product unless those losses are accompanied

by some form of personal injury or damage to property other than the defective product

itself."  *McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*, No. C-04-708 SC, 2004

WL 1771574, at *2 (N.D. Cal. Aug. 6, 2004) (quoting *KB Home v. Superior Court*, 5 Cal.

---

[5]  The Defendant also argues that these claims should also be dismissed because the Warranty Agreement
precludes consequential damages under any legal theory.  But, as stated above in the discussion under
Claims I and II, the Court has not found that the Warranty Agreement precludes consequential damages
under the circumstances as a matter of law.

Rptr. 3d 587, 589 (Cal. Ct. App. 2003)); *see also Frye v. Wine Library, Inc.*, No. 06-5399 SC, 2006 WL 3500605, at *2 (N.D. Cal. Dec. 4, 2006) ("The economic loss rule requires purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'") (quoting *Robinson Helicopter Co. v. Dana Corp.,* 102 P.3d 268 (Cal. 2004)). The Plaintiffs respond that they have sufficiently alleged that the generators caused damage to other property, namely other parts of the wind turbine system.[6]

### 1. *Economic Loss Doctrine – Background*

The recent California Supreme Court case of *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004), provides a background on the economic loss rule. "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits – without any claim of personal injury or damages to other property." *Id.* (citations and quotation marks omitted). The rule provides that where "a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* In doing so, the rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Id.*

California law, however, does not hold that the economic loss doctrine is an absolute bar against recovery in all tort cases where the parties are in contractual privity. For example, "California . . . has long recognized that the economic loss rule does not

---

[6] The Plaintiffs also unsuccessfully argue in a footnote that the economic loss doctrine should not apply because this is a services contract. As stated above, in the discussion of Claims I and II, that is not entirely clear because the underlying contract is clearly one for goods. Also, the alleged property damage would stem a breach of the goods contract, not an alleged breach of the Warranty Agreement. Finally, in California, the economic loss doctrine has been applied to services contracts. *See Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. C 06-2590 CW, 2006 WL 2458759, at *5 (N.D. Cal. Aug. 22, 2006).

necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated." *Jimenez v. Superior Court*, 58 P.3d 450, 457 (Cal. 2002). Thus, "in actions arising from the sale or purchase of a defective product, a plaintiff seeking to recover in tort rather than in contract must be able to demonstrate that its economic losses were accompanied by either (1) physical damage to property other than the defective product itself ("other property"), or (2) bodily injury. If such evidence is not present, the plaintiff is precluded from any tort recovery in either strict liability or negligence." *McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*, No. C-04-708 SC, 2004 WL 1771574, at *2 (N.D. Cal. Aug. 6, 2004). One reason for the distinction is that "[t]ort concerns come into play when safety is an issue; this concern with safety 'is reduced when an injury is only to the product itself.'" *Livermore Amador Valley Wastewater Mgmt. Agency v. Nw. Pipe & Casing Co.*, 915 F. Supp. 1066, 1073 (N.D. Cal. 1995) (quoting *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295 (1986)). When a product injures only itself, no losses beyond commercial losses ensue, and, as a matter of policy, a commercial user can take out insurance or contract around the risk of economic loss. *Id.*

"In summary, the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself. The law of contractual warranty governs damage to the product itself." *Jimenez*, 58 P.3d at 456. Based on the responsibility a manufacturer must undertake in distributing its products, California has long held that the nature of this responsibility meant that a manufacturer could appropriately be held liable for physical

injuries (including both personal injury and damage to property other than the product itself), regardless of the terms of any warranty. *See id.* (reviewing California law).

In *KB Homes*, the California Court of Appeal set forth a proposed test to determine whether the injured property is considered the property itself (and thus the economic loss rule bars tort damages) or whether it is considered "other party." *See KB Home v. Superior Court*, 5 Cal. Rptr. 3d 587, 596 (Cal. Ct. App. 2003); *see also McDowell Valley Vineyards,* 2004 WL 1771574, at *4 (considering four additional factors from *KB Home* to address whether a component part damaged part of a larger product (the product itself) or other property). For reasons set forth below, however, the Court does not need to consider those questions.

### 2. *The Court Must Predict What California's Highest Court Would Rule*

When a federal court needs to decide an issue of state law, it must do so in the way that the state's highest court would. *See In re Eurospark Indus., Inc.*, 288 B.R. 177, 182 (Bankr. E.D.N.Y. 2003). If there is no decision on point by the state's highest court, "then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *See Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776 (1967). *See also re Eurospark*, 288 B.R. at 182 ("In predicting how the highest state court would rule, the federal court should look to the trends displayed by prior rulings of that court, to rulings of the lower state courts, to relevant rulings from other jurisdictions and to secondary materials."). A federal court in this position must apply the law of the state as it exists, and must not engage in an attempt to change or expand state substantive law. *See Burris Chem. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993).

3.  *The Exceptions For Property Damages Under the Economic Loss Rule
    Have Been Narrowly Confined To Product Liability and
    Negligence Cases*

The California Supreme Court, or any state court found for that matter, has not

decided whether the economic loss rule applies to bar damages of intentional interference

with economic relations claims.  Reviewing the doctrine, when a defendant's product

causes damage to "other property," plaintiffs have only been able to recover under the

tort claims of product liability or negligence.  For example, in *Jimenez*, the California

Supreme Court stated that "the economic loss [rule] allows a plaintiff to recover in strict

products liability in tort when a product defect causes damage to 'other property,'" 58

P.3d at 456, and held that "we conclude that the manufacturer of a defective window

installed in a mass produced home may be strictly liable in tort for damage that the

window's defect causes to other parts of the home in which it is installed."  *Id.* at 457.

*See also KB Home*, 5 Cal Rptr 3d at 593-94 (Cal. Ct. App. 2003) ("Under the economic

loss rule a manufacturer or distributor may be liable in strict liability or negligence for

physical injury to property caused by a defective product, but not for purely economic

losses."); *San Francisco Unified School Dist. v. W.R. Grace & Co.-Connecticut*, 44 Cal.

Rptr. 2d 305, 310 (Cal. Ct. App. 1995) ("Until physical injury occurs – until damages

rises above the level of mere economic loss a plaintiff cannot state a cause of action for

strict liability or negligence."); California Jurisprudence 3d, § 86 (May 2006) ("Under the

'economic loss rule,' a manufacturer or distributor may be liable in strict liability or

negligence for physical injury to property caused by a defective product, but not for

purely 'economic losses.'"); *Waste Mgmt., Inc. v. Ishikawajima-Harima Heavy Indus.,

Co.*, No. CIV. S-04-2028 WBS DAD, 2006 WL 2507150 (E.D. Cal. Aug. 29, 2006)

(discussing whether economic loss doctrine bars claims of products liability or negligence under California law).

The exceptions to the preclusive effect of the economic loss doctrine, as carved out by California precedent, that apply to product liability and negligence claims do not logically apply to claims for interference with contractual or economic relations because the harms from those claims are purely financial. The injury for which recompense is sought in interference with economic relations claims is not physical injury – it is economic injury. "[T]he financial harm arising out of wrongful interference with plaintiff's contractual relations" is "purely economic loss." *See* Rizzo, *A Theory of Economic Loss in the Law of Torts,* 11 J. LEG. STUD. 281 (1982). Thus, the Court finds it likely that the California Supreme Court would hold that the economic loss doctrine bars the Plaintiffs' tort claims of interference with contractual or economic relations, as they are not among the established exceptions of products liability and negligence. Mindful of the Court's obligation not to expand the substantive law, the Court finds that the economic loss doctrine applies to bar the tort claims of Claims IV, V, and VI and that these claims are dismissed.

### 4. *Separate Duty*

The Court notes that the California Supreme Court's recent decision in *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004), that found that the economic loss rule did not bar the plaintiff's fraud claim "because [the fraud cause of action was] independent of [Defendant's] breach of contract," would not help the Plaintiffs here as the Court has dismissed the promissory fraud charges. That decision expressly based its

holding on the assumption that fraud claims would have to be adequately plead before

reaching the economic loss issue

> Nor do we believe that our decision will open the floodgates to future litigation. Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.  In addition, '[i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice.  Thus 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.'' This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'  We trust the trial courts of this state to enforce this pleading requirement.

*Id*. at 276 (citation omitted).

As discussed above, the Court has dismissed the promissory fraud claim for the

pleading requirement that the California Supreme Court explicitly cited – a lack of

particularity.  Furthermore, that exception to the economic loss doctrine is based on

injury from the breach of a duty *independent* of the agreement.  "The economic loss rule

requires purchaser to recover in contract for purely economic loss due to disappointed

expectations, unless he can demonstrate harm above and beyond a broken contractual

promise." *Id.* at 272.  Such harm envisioned by *Robinson Helicopter* may be

demonstrated "by showing injury arising from a breach of duty which is independent of

the contract or from conduct done with the intention of causing harm." *Frye v. Wine

Library, Inc.*, No. 06-5399 SC, 2006 WL 3500605, at *2 (N.D. Cal. Dec. 4, 2006).

However, the Complaint complains of non-compliance with the Warranty Agreement, not

the breach of a duty independent of the Warranty Agreement.  *See* Amended Complaint,

¶¶ 96, 97 (under Claim IV) ("Marathon's refusal to comply with the warranty and remedy

provisions of the Warranty Agreement has interfered with Enron Wind's contracts with

the Third Party Purchasers."); ¶ 114 (under Claim V) (same).

The Plaintiffs argue that the even if the economic loss doctrine does apply,

California Civil Code Section 1668 invalidates the Warranty Agreement's limitation of

liability provisions.  The Court disagrees.  Section 1668 provides that "[a]ll contracts

which have for their object, directly or indirectly, to exempt any one from responsibility

for his own fraud, or willful injury to the person or property of another, or violation of

law, whether willful or negligent, are against the policy of the law."  That section does

not, obviously, operate to bar every contractual limitation on damages or liability.  The

California Supreme Court has listed several factors that must be shown before an

agreement would be invalidated.  *See Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441,

445-46 (Cal. 1963).  The Warranty Agreement or the provisions limiting liability should

not be invalidated or limited under *Tunkl*.  Here, the parties are sophisticated business

entities and the contract does not implicate the public interest in the way required to

abrogate exculpatory provisions that limit liability under the relevant factors cited in

*Tunkl*.  *See CAZA Drilling (Cal.), Inc. v. TEG Oil & Gas U.S.A., Inc.*, 48 Cal. Rptr. 3d

271, 282-83 (Cal. Ct. App. 2006).

### D.  Claim VII – Section 17200 Claim

Claim VII of the Amended Complaint is for violations of California's unfair

competition law ("UCL"), California Business and Profession Code section 17200.  The

Defendant argues that this claim should be dismissed for a failure to plead with

particularity as it is based on the same conduct underlying Claim III, for promissory

fraud.  The Plaintiffs counter that this claim, like the promissory fraud claim, is plead

with the requisite particularity.

Section 17200 creates a cause of action for an "unlawful, unfair or fraudulent business act or practice." *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (Cal. Ct. App. 1996); *see also Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 160992, at *7 (N.D. Cal. Jan. 18, 2007). The UCL's purpose is to protect consumers and competitors "by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002).

A state-law claim alleging fraud under section 17200 brought in federal court must satisfy the heightened pleading requirements of Rule 9(b). *See Wang & Wang LLP v. Banco Do Brasil, S.A.*, No. Civ. S-06-00761 DFL KJM, 2007 WL 915232, at *4 (E.D. Cal. Mar. 26, 2007); *see also Marks*, 2007 WL 160992, at *7 (dismissing fraud and § 17200 claims for failure to plead with particularity); *Khoury v. Maly's of Cal., Inc.*, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993) (a plaintiff alleging unfair business practices under § 17200 must state with reasonable particularity the facts supporting the statutory elements of the violation); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).

The Plaintiffs do not dispute the Defendant's characterization of their section 17200 claim as one under the "fraud" variety of California's unfair competition law. In viewing the Amended Complaint's allegations under this claim, it is clear they are indeed fraud claims. (*See* Amended Complaint ¶¶ 139, 148, 149.) For the same reasons

discussed above that the promissory fraud claim is dismissed – a lack of particularity in

the pleading, including an absence of any facts from which the Court can infer that the

allegedly fraudulent statements were actually false when made –  Claim VII, for

violations of section 17200, must be dismissed.  To the extent that the Plaintiffs can

support their allegations with appropriate specificity, the Plaintiffs may replead Claim

VII.

     E.  <u>Claim VIII – Contractual Indemnity</u>

In Claim VIII, for Contractual Indemnity, Enron Wind claims that third party

purchasers were "damaged" because of the defective generators.  Further, Enron Wind

claims that as a result it has negotiated with the third party purchasers and has become

obligated to pay them for certain claims.  Enron Wind claims that Marathon is obligated

to indemnify Enron Wind for these claims under Section 8.1A of the Warranty

Agreement to the extent the claims arose from Marathon's breach of the Warranty

Agreement or its negligence.

Marathon argues that Enron Wind's citation of Section 8.1A skips that section's

first sentence, which provides "[t]he provisions of this Section 8.1A are expressly agreed

to be subject in all respects to the limitations on the recovery of damages which are

contained in Section 9.3, which limitations are incorporated herein by reference."

Section 9.3 states that "[e]xcept and then only to the extent expressly provided in this

Agreement, in no event shall either Party be liable to the other Party for special,

punitive, incidental or consequential damages, including, without limitation, damages

relating to loss of revenue, production or profits . . . ."

In their Opposition Memorandum, the Plaintiffs state that these are "direct

damages" and argue that the opening language of Section 9.3 authorizes indemnification.
They argue that the provision's beginning, which states "[e]xcept and then only to the
extent expressly provided in this Agreement," refers to Section 8.1A and allows the type
of damages they seek because "Section 9.3 only bars 'special, punitive, incidental or
consequential damages,' but not direct damages of the third party customers."  (Enron
Wind's Opp. Memo. at 13.)   The Plaintiffs contend that under Marathon's
interpretation, Enron Wind would never be entitled to indemnity for third-party
damages.

Marathon, in reply, expresses confusion about what Enron Wind means by their
undefined assertion for "direct damages," that Marathon's indemnification obligation
stated under Section 8.1 is subject to Section 9.3, and notes that it appears that Enron
Wind seeks far more than "direct damages" because the Amended Complaint states that
Marathon must indemnify Enron Wind "for all liabilities, obligations, losses, claims,
damages costs, charges or other expenses constituting or relating to the[] Third Party
Purchaser settlements."  (Amended Complaint,  ¶158.)

The California Supreme Court has explained that "[t]he primary object of all
[contract] interpretation is to ascertain and carry out the intention of the parties."  *City of
Manhattan Beach v. Superior Court*, 914 P.2d 160, 164 (Cal. 1996).  The parties' intent
"is to be ascertained from the writing alone, if possible."  Cal.Civ.Code § 1639.  The
Court must give reasonable meaning to each part of the contract, and not render any
portion meaningless.  *See World Savings & Loan Ass'n. v. Fed. Home Loan Bank of San
Francisco*, No. 00-4749 MMC, 2002 WL 1941155, at *3 (N.D. Cal. Aug. 19, 2002);
*AIU Ins. Co. v. Superior Court,* 799 P.2d 1253, 1268 (Cal. 1990).  If only one reasonable

interpretation of the contract provisions exists, the court's inquiry ends and that reasonable interpretation applies, but where an agreement is "'susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language,' the agreement is ambiguous and the court must look beyond the face of the agreement to resolve the ambiguity." *World Savings & Loan Ass'n*, 2002 WL 1941155, at *3 (citation omitted). "Contradictory or inconsistent provisions of a contract are to be reconciled by interpreting the language in such a manner that will give effect to the entire contract." *Estate of Petersen*, 34 Cal. Rptr. 2d 449 (Cal. Ct. App. 1994).

Guided by the above principles of interpretation, the Court finds that there is an ambiguity in the Warranty Agreement that precludes dismissal and that "at this early stage of litigation, it is not 'clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir. 2002). "Where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact." *Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.*, 707 F.2d 412, 418 (9th Cir. 1983); *see also Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 656 (Cal. Ct. App. 2004) (when two equally plausible interpretations of the contract may be made, a question of fact exists).

Here, the provisions of Sections 8.1A(a) and 9.3 of the Warranty Agreement cannot be reconciled at this early stage of litigation. Drawing all inferences in favor of the non-moving party, the sections are susceptible of two different and reasonable interpretations, both consistent with the contract language. Although Section 9.3

38

precludes incidental and consequential damages of the Plaintiffs and their customers, the

Plaintiffs may be, as they assert, entitled to recover direct damages of third party

purchasers who have asserted claims against the Plaintiffs due to Marathon's alleged

breaches.

    Finally, because parties seem to express differences as to what "direct damages"

are, it may be necessary to discuss the difference between direct and consequential

damages.  As a general matter under California law, contractual damages are of two

types – general damages (sometimes called direct damages) and special damages

(sometimes called consequential damages).  *See Lewis Jorge Const. Mgmt., Inc. v.*

*Pomona Unified Sch. Dist.*, 102 P.3d 257, 261 (Cal. 2004).  General damages are those

that flow directly and necessarily from a breach of contract, or that are a natural result of

a breach.  *Id.*  "Because general damages are a natural and necessary consequence of a

contract breach, they are often said to be within the contemplation of the parties,

meaning that because their occurrence is sufficiently predictable the parties at the time of

contracting are 'deemed' to have contemplated them."  *Id.*  The measure of direct

damages is the "difference between the value of the goods accepted and the value they

would have had if they had been as warranted by the seller."  *See* Cal.Comm.Code §

2714(2); *see also Consol. Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d

385, 393-94 (9th Cir. 1983).  Costs of cover are also generally considered to be direct

damages.  *See Hughes Commc'ns. Galaxy, Inc. v. United States*, 271 F.3d 1060, 1068

(Fed. Cir. 2001).  As stated by Professor Dobbs in a leading treatise

        Expectancy damages are sometimes measured by "general
        damages" or market measures.  Such measures use the market
        value of the very thing promised, at the time of performance, as a
        basis for calculation . . . .  "Special damages" (consequential

> damages) are measured, not by the value of the promised
> performance alone but by the gains such performance could
> produce for collateral reasons, or the loss that is produced by the
> absence of such performance.

Dan B. Dobbs, *Law of Remedies* § 12.1(1) (2d ed. 1993).

The Ninth Circuit has defined consequential damages as damages not arising "within the scope" of plaintiff's transactions with defendant, but resulting in a foreseeable way from losses incurred by plaintiff because of defendant's breach. *See R.B. Matthews, Inc. v. Transamerica Transp. Serv., Inc.*, 945 F.2d 269, 274 (9th Cir. 1991). Consequential damages, under subsection 2(a) of California Commercial Code section 2715, that result from the seller's breach include "(a) [a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." *See, e.g., Serian Bros., Inc. v. Agri-Sun Nursery*, 30 Cal. Rptr. 2d 382, 386 (Cal. Ct. App. 1994); *see also Twin Creeks Entm't, Inc. v. U.S. JVC Corp.*, No. C-93-4104 MHP, 1995 WL 86563, at *4 (N.D. Cal. Feb. 22, 1995) (Consequential damages include those that do not arise within the scope of the buyer-seller transaction but stem from losses incurred by the non-breaching party in third-party dealings, which were a proximate result of the breach.).

## V.  CONCLUSION

Defendant's motion to dismiss those portions of Claims I and II that assert claims for special, consequential, incidental, and punitive damages is denied.

Defendant's motion to dismiss Claims III and VII, the fraud claim and the section 17200 claim, for failure to plead with specificity, pursuant to Rule 9(b), Fed.R.Civ.P., is granted.  Plaintiffs are granted thirty days' leave from the date of filing of this opinion to

40

replead and file an amended complaint setting forth the fraud and section 17200 claims in

proper detail.

Defendant's motion to dismiss Claims IV, V, and VI is granted.  Those claims are

dismissed.

Defendant's motion to dismiss Claim VIII is denied.

Plaintiffs are to settle an order consistent with this opinion.


Dated:    New York, New York
          April 24, 2007

                                    **s/Arthur J. Gonzalez**
                                    UNITED STATES BANKRUPTCY JUDGE